**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LAWRENCE ARDUINI, derivatively on behalf of International Game Technology,<br>                    *Plaintiff-Appellant*,<br><br>                    v.<br><br>PATTI S. HART; THOMAS J. MATTHEWS; PATRICK W. CAVANAUGH; ROBERT A. BITTMAN; RICHARD R. BURT; ROBERT A. MATHEWSON; ROBERT MILLER; DAVID E. ROBERSON; PHILIP G. SATRE,<br>                    *Defendants-Appellees*,<br><br>                    and<br><br>INTERNATIONAL GAMING TECHNOLOGY,<br>                    *Nominal Defendant-Appellee*. | No. 12-15750<br><br>D.C. No.<br>3:11-cv-00255-<br>ECR-VPC<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, Jr., Senior District Judge, Presiding

Argued and Submitted
April 10, 2014—San Francisco, California

Filed December 17, 2014

Before: Mary M. Schroeder and Consuelo M. Callahan,
Circuit Judges, and Robert W. Pratt, Senior District Judge.[*]

Opinion by Judge Callahan

---

## SUMMARY[**]

---

### Shareholder Derivative Actions/Issue Preclusion

The panel affirmed the district court's dismissal of a shareholder derivative action on the basis that issue preclusion barred relitigation of whether plaintiff, Lawrence Arduini, made a sufficient "demand" on a corporation's board of directors before filing suit.

Under Federal Rule of Civil Procedure 23.1, a shareholder must either demand action from the corporation's directors before filing a shareholder derivative suit, or plead with particularity the reasons why such demand would have been futile.

The panel held that issue preclusion prevented Arduini from relitigating the issue of demand futility. The panel noted that before Arduini filed his derivative action against International Gaming Technology and its board of directors, four separate shareholders filed separate derivative suits

---

[*] The Honorable Robert W. Pratt, Senior District Judge for the U.S. District Court for the Southern District of Iowa, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

against the company that were subsequently consolidated and dismissed. *See Fosbre v. Matthews*, 2010 WL 2696615 (D. Nev. July 2, 2010). The panel determined that the issue of demand futility was the same in both *Fosbre* and Arduini's action, and therefore there was an identity of issues.

The panel held that Arduini and the *Fosbre* plaintiffs were in privity because International Gaming Technology was the true party in interest and there was no indication that the *Fosbre* plaintiffs were inadequate representatives. Further, there was no inequity in applying issue preclusion because the *Fosbre* plaintiffs fully litigated their demand futility claim. There was no due process violation because there was no requirement that shareholders be given notice of dismissal in a derivative suit where the issue of demand futility is fully litigated and dismissed on the merits. Moreover, the panel noted that the record showed that Arduini's counsel in this case had actual notice of the *Fosbre* proceedings.

## COUNSEL

Francis A. Bottini, Jr. and Albert Y. Chang (argued), Chapin Fitzgerald Sullivan & Bottini LLP, San Diego, California, for Plaintiff-Appellant.

Richard G. Campbell, Jr. and Robert F. Meich, Armstrong Teasdale LLP, Reno, Nevada; Boris Feldman (argued), David S. Steuer, Cynthia Dy, and Cheryl W. Foung, Wilson Sonsini Goodrich & Rosati, Palo Alto, California, for Nominal Defendant-Appellee.

**OPINION**

CALLAHAN, Circuit Judge:

Shareholders are required to make a "demand" on the corporation's board of directors before filing a derivative suit, unless they sufficiently allege that demand would be futile because the board would not act on the demand. Here, before Plaintiff Lawrence Arduini ("Arduini") filed his derivative action against International Gaming Technology ("IGT") and its board of directors, four shareholders filed separate derivative suits that were subsequently consolidated. The district court then dismissed the consolidated suit for failure to make a demand on the corporation's board or sufficiently allege demand futility, and on appeal, we affirmed that dismissal. The district court then dismissed Arduini's action, holding that Arduini had failed to make a demand on the IGT board and could not allege demand futility based on issue preclusion due to its ruling in the prior derivative suit. We hold that under Nevada law and the facts of this case, the district court properly held that issue preclusion barred relitigation of demand futility, and we affirm.

**I**

Defendant-Appellee International Game Technology ("IGT") is a Nevada corporation that makes and services electronic gaming systems. Appellant Arduini, an IGT shareholder, alleges that certain IGT senior officers made intentionally misleading statements about the bright financial prospects of IGT when, in fact, IGT's prospects were dim, and that IGT's board of directors failed to adequately oversee the officers and the company. Based on this alleged mismanagement, on April 8, 2011, Arduini filed a

shareholder derivative complaint, *Arduini v. Hart*, No. 3:11-cv-255-ECR-VPC (D. Nev.).   Arduini made no pre-suit demand on the current IGT board, instead alleging that demand would be futile.  The case was eventually transferred to Senior District Judge Edward C. Reed.

## A

Before Arduini filed his complaint, Judge Reed presided over *Fosbre v. Matthews*, an IGT derivative suit with substantially similar allegations.  No. 3:09-CV-0467-ECR-RAM, 2010 WL 2696615 (D. Nev. July 2, 2010).  *Fosbre* was a consolidated suit involving what were originally four separate derivative suits filed by four different IGT shareholders who were represented by four separate sets of counsel.

The *Fosbre* plaintiffs had made no demand on the IGT board.  Rather, they argued that such a demand was excused because: 1) the IGT board extended the employment contract of Thomas J. Matthews ("Matthews"), IGT's former CEO and chairman of IGT's board of directors, and allowed him to resign rather than terminating him for cause; 2) Directors Burt, Mathewson, Miller, and Rentschler received such high compensation from IGT that their ability to impartially consider a demand was compromised; 3) Directors Burt, Hart, Mathewson, and Roberson were members of IGT's auditing committee and Directors Burt, Miller, Rentschler, and Satre were members of IGT's governance committee and faced a substantial likelihood of liability for breaches of their fiduciary duties as committee members; 4) Matthews was incapable of considering a demand due to his employment as IGT Chairman and Director Patti S. Hart ("Hart"), who replaced Matthews as CEO, was incapable of considering a

demand due to her new position; and 5) Directors Burt, Bittman, and Matthews engaged in insider trading of IGT stock. *Id.* at *3–7. On July 2, 2010, Judge Reed granted IGT's motion to dismiss in *Fosbre*, holding that the consolidated complaint's demand futility allegations were insufficient. *Id.* at *8.

The *Fosbre* plaintiffs appealed, and on April 2, 2012, we affirmed the district court's dismissal. *Israni v. Bittman*, 473 F. App'x 548 (9th Cir. 2012) (unpublished disposition). In *Israni*, we first rejected the allegations of director interest based on the directors' approval of the revised employment agreement for former CEO Matthews. The plaintiffs had argued that the directors approved Matthews' contract in an effort to have their own compensation increased. We found these allegations were insufficient to show the directors' interest because they did not explain how approval of the contract would influence the directors' compensation, nor why this approval was not a "valid exercise of business judgment." *Id.* at 550 (citing *Brehm v. Eisner*, 746 A.2d 244, 257, 263 (Del. 2000)).

Second, we rejected the complaint's allegations of director interest based on high director compensation, as a "director's receipt of compensation alone does not excuse demand, and the complaint did not provide sufficient factual allegations to show the fees here were unusual or uncustomary." *Id.* at 550–51 (citing *Orman v. Cullman*, 794 A.2d 5, 29 n.62 (Del. Ch. 2002)).

Third, we rejected the allegation that certain directors' membership on IGT's audit and governance committees supported demand futility because the complaint "failed to plead facts regarding what information the committee

members saw and failed to act on" and did not "contain particularized facts showing that the committee members engaged in 'intentional misconduct, fraud or a knowing violation of the law,' as required under Nevada law." *Id.* at 551 (citing, *inter alia*, *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996); *In re AMERCO Derivative Litig.*, 252 P.3d 681, 700–01 (Nev. 2011)).

Fourth, we rejected the plaintiffs' contention that the insider directors' employment with IGT supported a finding of demand futility "because the complaint did not allege the insider directors were beholden to an interested party." *Id.* (citation omitted). Finally, we declined to consider the alleged insider trading by IGT directors Burt, Bittman, and Matthews did not support a finding of demand futility because the *Fosbre* plaintiffs "could not show that a majority of the IGT board was not impartial even if demand were excused with respect to these three defendants." *Id.*

**B**

At the same time the *Fosbre* case was pending before Judge Reed, he also presided over *International Brotherhood of Electrical Workers Local 697 Pension Fund v. IGT*, No. 3:09-CV-419-ECR-RAM ("*IBEW*"), a securities fraud class action lawsuit raising similar allegations to those asserted in *Fosbre* and by Arduini. Judge Reed denied the defendants' motion to dismiss on March 15, 2011, finding that at least some of the plaintiffs' claims sufficiently alleged that IGT intentionally misled investors to the investors' detriment. 2011 WL 915115, at *9 (D. Nev. Mar. 15, 2011). The parties eventually settled the case and on October 22, 2012, *IBEW*

was dismissed with prejudice, before any decision on the pending class certification motion.[1]

## C

Shortly after Judge Reed's March 2011 denial of the motion to dismiss in *IBEW*, Arduini filed his derivative complaint. On April 19, 2011, IGT filed a motion to dismiss in *Arduini v. Hart* arguing, *inter alia*, that the action should be dismissed under the doctrine of issue preclusion because demand futility was previously litigated in favor of IGT in the *Fosbre* case. Judge Reed granted the motion on March 14, 2012, finding an identity of issues and parties between *Arduini* and *Fosbre*. *Arduini v. Hart*, No. 3:11-cv-00255-ECR-UPC, 2012 WL 893874 (D. Nev. Mar. 14, 2012).

The district court first held that "demand futility was squarely at issue [in *Fosbre*] and [Arduini's] reasons for failing to make a demand on the board are essentially the same in this action, or any additional reasons could have been raised in the previous action." *Id.* at *3. The court rejected Arduini's argument that his new factual allegations precluded a finding of identity of issues:

> The fact that the *Fosbre* plaintiffs did not plead "every possible cause of action or

---

[1] Judge Reed also presided over another IGT shareholder derivative suit with similar allegations, *Sprando v. Hart*, No. 3:10-cv-00415-ECR-VPC (D. Nev.). The district court dismissed the *Sprando* complaint, even though the shareholder had made a demand on the IGT board, because the board had not refused that shareholder's demand for investigation and action. 2011 WL 3055242, at *4–5 (D. Nev. July 22, 2011). We subsequently affirmed that dismissal. *Sprando v. Hart*, 527 F. App'x 646 (9th Cir. 2013) (unpublished disposition).

include every possible time period or
defendant does not alter the central issue –
whether demand on [defendants] would have
been futile." *In re Bed Bath & Beyond*, No.
06-cv-5107 (JAP), 2007 WL 4165389, at *6
(D.N.J. Nov. 19, 2007).  Nor do Plaintiff's
arguments that he has allegations specific to
the demand futility issue that are different
from the allegations brought up in *Fosbre*
preclude our use of issue preclusion. "Facts
excusing a failure to make demand that could
have been pleaded in the first complaint, or by
amendment before dismissal, should be
barred" because "a party who has litigated an
ultimate fact may not bring forward different
evidentiary facts in order to relitigate the
finding." *In re Sonus* [*Networks, Inc.
S'holder Derivative Litig.*, 499 F.3d 47, 63
(1st Cir. 2007)].

*Id.*

The district court also rejected Arduini's specific
argument that the denial of the motion to dismiss in *IBEW*
precluded a finding of identity of issues, holding that its
*IBEW* ruling "did not relate in any way to the issue of demand
futility in a shareholder derivative case." *Id.* at *3 n.3.  The
district further held that Arduini was in privity with the
plaintiffs in *Fosbre*, as "plaintiffs in a shareholder derivative
action represent the corporation, and therefore the question of
whether demand on the board of directors would have been
futile is an issue that is the same no matter which shareholder
serves as plaintiff." *Id.* at *3 (citing *Sonus*, 499 F.3d at 64).

The district court issued its final judgment on March 15, 2012, and Arduini timely appealed.

## II

### A

Under Federal Rule of Civil Procedure 23.1 ("Rule 23.1"), a shareholder must either demand action from the corporation's directors before filing a shareholder derivative suit, or plead with particularity the reasons why such demand would have been futile.[2]  A court looks to the law of the state of incorporation to determine when demand would be futile. *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014). We review for abuse of discretion a district court's dismissal of a derivative suit based on failure to show demand futility. *Id.* at 1147.  We review de novo a district court's application of issue preclusion.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008).

Because IGT is incorporated in Nevada, Nevada law defines demand futility in this case.  Nevada courts look to Delaware law for guidance on demand futility. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1179–84 (Nev. 2006). Derivative suits allow a shareholder "to 'compel the corporation to sue' and to thereby pursue litigation on the corporation's behalf against the corporation's board of directors and officers." *Id.* at 1179.  However, "because the power to manage the corporation's affairs resides in the board of directors, a shareholder must, before filing suit, make a demand on the board . . . to obtain the action that the

---

[2] Nevada Rule of Civil Procedure 23.1 contains a similar demand futility requirement.

shareholder desires." *Id.*; *Rosenbloom*, 765 F.3d at 1147–48 (discussing demand futility requirement under Delaware law).

In order to show demand futility under Nevada law, the plaintiff must allege "particularized facts" demonstrating:

> (1) in those cases in which the directors approved the challenged transactions, a reasonable doubt that the directors were disinterested or that the business judgment rule otherwise protects the challenged decisions; or (2) in those cases in which the challenged transactions did not involve board action or the board of directors has changed since the transactions, a reasonable doubt that the board can impartially consider a demand.

*Shoen*, 137 P.3d at 1184 (citation omitted).  Lack of director independence can be shown through allegations demonstrating that "the majority is 'beholden to' directors who would be liable." *AMERCO*, 252 P.3d at 697–98 (citing, *inter alia*, *Shoen*, 137 P.3d at 1183).   "[T]o show interestedness, a shareholder must allege that a majority of the board members would be 'materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders.'"[3] *Shoen*, 137 P.3d at 1183 (citation omitted).  Moreover, "[a]llegations of mere threats of liability through approval of the wrongdoing or other participation . . . do not show sufficient interestedness to excuse the demand requirement."

---

[3] Where a board consists of an even number of directors, as is the case here, plaintiffs must plead that at least half of the directors are "interested" to show demand futility.  *AMERCO*, 252 P.3d at 698.

*Id.* (citations omitted). "[I]nterestedness through potential liability is a difficult threshold to meet," as "directors and officers may only be found personally liable for breaching their fiduciary duty of loyalty if that breach involves intentional misconduct, fraud, or a knowing violation of the law." *Id.* at 1184.

## B

Under Nevada law, issue preclusion "applies to prevent relitigation of [] a specific issue that was decided in a previous suit between the parties, even if the second suit is based on different causes of action and different circumstances." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713–14 (Nev. 2008).[4]  In order for an issue decided in another case to have preclusive effect,

> "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation"; and (4) the issue was actually and necessarily litigated.

*Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 916–17 (Nev. 2014) (quoting *Five Star Capital*, 194 P.3d at 713).

---

[4] Nevada law distinguishes between issue preclusion and claim preclusion, which "applies to preclude an entire second suit that is based on the same set of facts and circumstances as the first suit." *Id.* at 713–14 (citation omitted).  We express no opinion on whether claim preclusion could apply in this case.

### III

Arduini contends that issue preclusion does not apply here because: 1) the issues in *Fosbre* and this case are not identical; 2) he is not in privity with the *Fosbre* plaintiffs for the purposes of issue preclusion; and 3) the equities and due process weigh against applying issue preclusion here. Arduini does not dispute that *Fosbre* was a final ruling on the merits or that the issue of demand futility was actually and necessarily litigated in *Fosbre*.

### A

Arduini first argues that issue preclusion does not apply because he assserted new allegations regarding demand futility that were absent from the *Fosbre* complaint. Specifically, Arduini points to: 1) his allegation that the motion to dismiss in the *IBEW* securities fraud case was denied; 2) statements of confidential witnesses that "further bolster the allegations of Defendants' knowledge of securities fraud"; and 3) allegations regarding the IGT board's authorization of a $777 million stock repurchase and its failure to seek recovery against Directors Matthews and Cavanaugh. Arduini claims that these new allegations preclude a finding of identity of issues because they raise questions as to whether the board faces a substantial likelihood of liability. In Arduini's view, Nevada law requires that each *allegation* regarding demand futility in the second complaint be alleged in the first complaint before the court may apply issue preclusion. IGT responds that while the *Fosbre* and *Arduini* complaints have slightly different allegations, the *issue* being litigated remained the same – whether the plaintiffs had shown that demand on the IGT board would be futile.

We agree with IGT.  Under Nevada law, the underlying demand futility *allegations* need not be identical before issue preclusion applies.  The question is, rather, whether the "same ultimate issue" was decided in the prior case.  *Alcantara*, 321 P.3d at 916–17.  And an "issue," using the plain meaning of the term, is simply "a matter that is in dispute between two or more parties."  *Issue Definition*, Merriam-Webster Online, http://www.merriam-webster.com/dictionary/issue/   (last visited November 4, 2014).   The assertion of additional allegations to support the subsequent shareholder's contention that demand was futile does not make this a new issue. Indeed, the Nevada Supreme Court has explained that "[i]ssue preclusion cannot be avoided by attempting to raise a new legal or factual argument that involves the same ultimate issue previously decided in the prior case." *Alcantara*, 321 P.3d at 916–17 (citing, *inter alia*, *Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) (stating that "[i]f a party could avoid issue preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined")); *see also Sonus*, 499 F.3d at 63 ("[E]ven under the doctrine of issue preclusion, a party who has litigated an ultimate fact may not bring forward different evidentiary facts in order to relitigate the finding.") (citing, *inter alia*, Restatement (Second) of Judgments, § 27 cmt. c (1982)).

Here, the matter in dispute in both cases is simply whether demand should be excused because the shareholders have sufficiently alleged that making a demand on the current IGT board would be futile.   Arduini's offer of some additional allegations in support of his contention that demand is futile does not make this a different issue under Nevada law.  To hold otherwise would mean that issue preclusion would almost never apply – subsequent plaintiffs

could simply add more allegations (or more specific allegations) of corporate malfeasance, and then claim there was no identity of issues. Defendants would then be forced to repeatedly relitigate demand futility, leading to "multiple litigation," wasted judicial resources, and potentially inconsistent proceedings. *See Alcantara*, 321 P.3d at 916 (citing *Berkson v. LePome*, 245 P.3d 560, 566 (Nev. 2010)); *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994). Indeed, this appears to be the case here. IGT already litigated demand futility in the *Fosbre* consolidated suit, which involved four different plaintiffs represented by four separate sets of counsel. Requiring IGT to show that the underlying allegations asserted in *Fosbre* and here are identical would run counter to issue preclusion's purposes.

## B

Even assuming that under Nevada law a court may look to the underlying allegations to determine whether issue preclusion applies to demand futility, IGT has shown that the issue of demand futility here is identical to *Fosbre*. The vast majority of Arduini's demand futility allegations are identical to those in *Fosbre*. Indeed, at oral argument, counsel for Arduini conceded that the suit was identical to *Fosbre*. Further, the new allegations are cumulative, could have been raised in the earlier suit, or make no difference to the demand futility inquiry because they do not show that a majority of the board was "interested." *See Sonus*, 499 F.3d at 63–64.

It appears that only two of our sister circuits have examined issue preclusion in the demand futility context in

published opinions.[5]   In *In re Sonus Networks, Inc. Shareholder Litigation*, 499 F.3d 47 (1st Cir. 2007), the First Circuit held that issue preclusion barred relitigation of demand futility, even though the second shareholder derivative suit alleged additional facts, including the existence of "red flags" in the company's SEC filings.  *Id.* at 63.  The *Sonus* court found that the additional allegations were cumulative and did not preclude a finding of identity of issues, explaining: "The plaintiffs' threshold difficulty is that the vast majority of their allegations are not 'new' since the state complaint was dismissed, but only 'different.'  By that we mean that the evidence was available and could have been brought before the state court before it dismissed the state action."  *Id.* at 62.[6]  The *Sonus* court further explained:

---

[5] The Eighth Circuit briefly addressed issue preclusion and demand futility in *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013).  It stated that "[g]enerally, under Delaware law, a judgment rendered in a shareholder-derivative lawsuit will preclude subsequent litigation by the corporation and its shareholders" and "[p]reclusion principles may also apply to other types of dismissals, for instance a shareholder's dismissal for failure to make demand on the board of directors."  *Id.* at 1243 (citations omitted).  However, this explanation arose in the context of whether a federal court should stay a federal shareholder-derivative proceeding while a parallel state court proceeding was on-going.

[6] Several district and state courts applying their respective state law on issue preclusion and demand futility have also found that new allegations added to subsequent shareholder suits made no difference to the demand futility analysis and thus did not bar issue preclusion.  *See, e.g.*, *Holt v. Golden*, 880 F. Supp. 2d 199, 203 (D. Mass. 2012); *Harben v. Dillard*, No. 4:09cv00395 BSM, 2010 WL 3893980, at *5 (E.D. Ark. Sept. 30, 2010); *In re Bed Bath & Beyond*, 2007 WL 4165389, at *5–6; *Hanson v. Odyssey Healthcare, Inc.*, No. 3:04-cv-2751-N, 2007 WL 5186795, at *6 (N.D. Tex. Sept. 21, 2007); *LeBoyer v. Greenspan*, No. CV 03-5603-GHK (JTLx), 2007 WL 4287646, at *2 (C.D. Cal. June 13, 2007); *In re Career Educ. Corp. Derivative Litig.*, C.A. No. 1398-VCP, 2007 WL 2875203,

The question was whether demand on the board of directors would have been futile, which is an issue that would have been the same no matter which shareholder served as nominal plaintiff.  The defendants have already been put to the trouble of litigating the very question at issue, and the policy of repose strongly militates in favor of preclusion.

*Id.* at 64 (citations omitted).

In contrast, in *Freedman v. Redstone*, 753 F.3d 416 (3d Cir. 2014), the Third Circuit looked to the specific allegations of a New York state derivative suit to determine whether it precluded a finding that a certain director was disinterested in a subsequent derivative suit.  The Third Circuit explained that under New York law, in demand futility cases, "a prior ruling on a director's independence does not necessarily apply in a future proceeding addressing the same topic" because "[a] determination of a director's independence [] is concerned with a possibly fluid relationship and, accordingly, differs from the determination of a fixed historical fact in the first litigation."  *Id.* at 425.

The *Freedman* court then held that the issues were not identical because: 1) the two suits alleged different facts in support of their contention that this director was not disinterested; and 2) seven years had passed between the

---

at *12–13 (Del. Ch. Sept. 28, 2007).  *But see Ji v. Van Heyningen*, No. CA 05-273 ML, 2006 WL 2521440, at *3–5 (D.R.I. Aug. 29, 2006) (declining to apply issue preclusion in derivative suit despite similar demand futility allegations in prior suit).

filing of the two complaints, and "it would be inappropriate" to assume that the director had the same relationship with one of the executives being sued after that passage of time. *Id.* at 426. However, the transactions at issue in the New York state case occurred at least two years before the transactions at issue in *Freedman* such that *Freedman* was a completely different suit than the New York state case. Given the passage of time and the fact that the suits involved different transactions, *Freedman* is distinguishable from Arduini's case.

We are persuaded by the reasoning of *Sonus*, which applies with equal force here. With the exception of the allegations regarding the denial of the motion to dismiss in *IBEW*, all of Arduini's allegations were either raised or could have been raised in the *Fosbre* complaint. Moreover, Arduini's additional allegations make no difference to the ultimate demand futility analysis because they do not show that the *current* board would be held liable and would thus be incapable of considering Arduini's demand, considering that only two of the eight current board members were on the board in 2007 and 2008. *See Shoen*, 137 P.3d at 1183–84 (to show interestedness, shareholder must allege that a majority of the board members would be materially affected by a decision of the board in a manner not shared by the corporation and the stockholders). Indeed, even if *all* of the current IGT board members had been named as defendants in this suit, that fact alone would be insufficient to show that demand would be futile. *See Aronson v. Lewis*, 473 A.2d 805, 818 (Del. 1984) (noting a bare claim that the directors would have to sue themselves does not raise a legally cognizable claim under Delaware corporate law), *overruled on other grounds by Brehm*, 746 A.2d at 253–54.

The *Arduini* complaint alleges that demand is futile because the current board "faces a sufficiently substantial likelihood of liability for their breach of fiduciary duties" based on: 1) the naming of IGT, Matthews, and Cavanaugh as defendants in the *IBEW* complaint; 2) the denial of the motion to dismiss in *IBEW*; and 3) the failure of the current board to file any lawsuits against those responsible for the conduct at issue in *IBEW*.  Arduini argues that his demand futility claim is different from that in *Fosbre* because of his additional allegations regarding the denial of the motion to dismiss in *IBEW*, statements of confidential witnesses, and IGT's stock repurchases.

Arduini's arguments are not persuasive.  The denial of the motion to dismiss in *IBEW* might have increased the probability that the corporation would eventually be found liable for securities fraud, considering the strict pleading requirements for federal securities class action suits. However, this possibility alone, without more specific allegations, does not show that demand on the current directors would be futile.  Only two of the current directors were on the board at the time of the alleged securities fraud and thus could potentially be held liable for the board's failure to act.[7]  Further, the denial of the motion to dismiss was not a final order and since the parties settled, there was no ultimate finding of liability in *IBEW* which could call into doubt the current directors' impartiality.

---

[7] The IGT board at the time of the filing of the *Arduini* complaint consisted of Hart, Miller, Roberson, Satre, Alves, Chaffin, Creed, and Sadusky.  Miller and Hart are the only directors who were on the board at the time of the events alleged in the complaint in 2007–2008.

The Nevada Supreme Court's opinion in *Shoen v. SAC Holding Corp.*, 137 P.3d 1171 (Nev. 2006), is instructive. There, the court explained, "[a]llegations of mere threats of liability through approval of the wrongdoing or other participation . . . do not show sufficient interestedness to excuse the demand requirement," as "directors and officers may only be found personally liable for breaching their fiduciary duty of loyalty if that breach involves intentional misconduct, fraud, or a knowing violation of the law." *Id.* at 1183–84.  Here, Arduini's claims concerning the *IBEW* litigation do not allege that a majority of the current directors directly participated in any wrongdoing, but rather at most allege that the directors failed to act when presented with allegations of wrongdoing of their predecessors.  Such an allegation does not create "a reasonable doubt that the board can impartially consider a demand."  *See id.*[8]

Overall, we affirm the district court's determination that the demand futility issues in *Fosbre* and Arduini's suit were identical for the purposes of issue preclusion.

---

[8] As new evidence showing demand futility, Arduini also points to confidential witness allegations regarding the Defendants' alleged knowledge of IGT's misrepresentations and omissions in 2007 and 2008 and allegations regarding IGT's $777 million stock repurchases in 2007 and 2008.  While these specific allegations were not presented in *Fosbre*, the *Fosbre* complaint did contain similar allegations that IGT officers authorized stock buybacks and took advantage of the buybacks to sell their IGT stock at inflated prices.  The *Arduini* complaint's additional or different details on Defendants' knowledge of IGT's misrepresentations and their participation in the stock buyback do not raise a "new" issue precluding a finding of identity of issues for the reasons discussed *supra*.  Moreover, these allegations concern only two of the current board members and could have been raised in the *Fosbre* complaint.  *See Sonus*, 499 F.3d at 63–64.

## IV

### A

Arduini next argues that issue preclusion does not apply because there is no identity of parties between his suit and *Fosbre*.  In his view, he was not in privity with the *Fosbre* plaintiffs because they failed to establish derivative standing and did not adequately represent IGT and its shareholders. He asserts that there is no privity because "shareholders who fail to establish their representative capacity can only act on their own behalf and are not in privity with other shareholders."  Arduini cites *Pyott v. Louisiana Municipal Police Employees' Retirement System*, 46 A.3d 313, 330 (Del. Ch. 2012) ("*Pyott I*"), for the proposition that initially shareholders assert "only their individual claim to obtain equitable authority to sue," and that if an action is dismissed for failure to establish demand futility, "plaintiffs never attained the status as a representative of the corporation and its shareholders."[9]  He reasons that pursuant to *Pyott I*, the dismissal of the first derivative suit "would *not* preclude other shareholders from establishing their own derivative standing in a new action."  *See id.* at 330–35.

The fact that Arduini was not a party to the *Fosbre* case does potentially raise concerns.  The Nevada Supreme Court has stated that "[i]ssue preclusion can only be used against a party whose due process rights have been met by virtue of that party having been a party or in privity with a party in the

---

[9] The Delaware Supreme Court subsequently reversed *Pyott I* on different grounds in *Pyott v. Louisiana Municipal Police Employees' Retirement System*, 74 A.3d 612 (Del. 2013) ("*Pyott II*").

prior litigation." *Alcantara*, 321 P.3d at 917 (quoting *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009)).

We have not found any Nevada case addressing whether shareholders in derivative suits are in privity for the purposes of issue preclusion. However, the majority of courts that have addressed this issue have held that shareholders asserting derivative suits are in privity. In *Pyott II*, for example, the Delaware Supreme Court, applying California law, held that "derivative stockholders are in privity with each other because they act on behalf of the defendant corporation." 74 A.3d at 614. The court noted that the Delaware lower courts were split on whether there is privity between derivative stockholders as a matter of Delaware law, but that "numerous other jurisdictions" had held there was privity.[10] *Id.* at 618 (citations omitted).

Similarly, in *Sonus*, the First Circuit explained that "the prevailing rule [is] that the shareholder in a derivative suit represents the corporation," and "if the shareholder can sue on the corporation's behalf, it follows that the corporation is bound by the results of the suit in subsequent litigation, even if different shareholders prosecute the suits." 499 F.3d at 64; *see also Ross v. Bernhard*, 396 U.S. 531, 538 (1970) ("The claim pressed by the stockholder against directors . . . 'is not his own but the corporation's.'") (citation omitted); *Goldman v. Northrop Corp.*, 603 F.2d 106, 109 (9th Cir. 1979) (parties in separate derivative suits were the same although represented by different shareholders because "[t]he

---

[10] While the *Pyott II* court applied California law, California and Nevada law regarding issue preclusion are similar. *Compare Pyott II*, 74 A.3d at 617 (applying California law), *with Five Star Capital*, 194 P.3d at 713 (applying Nevada law).

corporation was the sole real party in interest in both cases").[11]

Such reasoning applies equally to Nevada derivative suits, where the shareholders are acting on behalf of the corporation and its shareholders and the underlying issue of demand futility is the same regardless of which shareholder brings suit. We therefore hold that shareholders bringing derivative suits are in privity for the purposes of issue preclusion under Nevada law.

### B

Arduini contends that even assuming he was otherwise in privity with the shareholders in *Fosbre*, those shareholders were inadequate representatives of IGT because they failed to properly plead demand futility, failed to amend their defective complaint after it was dismissed, and on appeal, submitted documents that were never filed in the district court. Due to this alleged inadequate representation, Arduini

---

[11] Further, Nevada has adopted Restatement (Second) of Judgments § 41(1) (1982), which provides that "[a] person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party." *Alcantara*, 321 P.3d at 917. Under § 41, a person is "represented" by a party who is, *inter alia*, the trustee, executor, guardian, or "[t]he representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member." *Id.* These examples of representation are analogous to that of shareholder derivative suits, where a shareholder is acting on behalf of the corporation and also other shareholders.

contends there is no identity of parties for the purposes of issue preclusion.**[12]**

We agree that inadequate representation by the first shareholder might prevent issue preclusion because a shareholder may not bind a corporation unless he adequately represents the interests of the corporation.  This position finds support in the text of Rule 23.1(a) and Nevada Rule of Civil Procedure 23.1, which both state that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."  *Accord Pyott II*, 74 A.3d at 618 (under California law, if the first shareholders to bring suit "were inadequate representatives, collateral estoppel will not bar a second, identical claim") (citing, *inter alia*, Restatement (Second) of Judgments, § 42(1)).  Such a rule is necessary because "[p]recluding the suit of a litigant who has not been adequately represented in the earlier suit would raise serious due process concerns" and because of the possibility for collusion between a nominal plaintiff and the defendants.  *See Sonus*, 499 F.3d at 65 (citations omitted).  Indeed, we have noted that an "adequate [shareholder] representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class."

---

**[12]** IGT argues that this court should not consider Arduini's arguments regarding inadequate representation, the equities, and due process because they were not raised below.  We generally do not consider issues raised for the first time on appeal.  *In re Rains*, 428 F.3d 893, 902 (9th Cir. 2005) (citation omitted).  However, because "[p]recluding the suit of a litigant who has not been adequately represented in [an] earlier suit would raise serious due process concerns,"  *Sonus*, 499 F.3d at 64, we choose to address these issues.

*Larson v. Dumke*, 900 F.2d 1363, 1367 (9th Cir. 1990) (citations omitted).

Other courts considering issue preclusion in the derivative suit context have examined whether the first shareholder adequately litigated his suit or engaged in collusive behavior with the corporation.  The *Sonus* court held that a subsequent shareholder seeking to avoid issue preclusion must show that the original plaintiffs were "grossly deficient" representatives.  *Sonus*, 499 F.3d at 66.  Quoting the Restatement (Second) of Judgments § 42 (1982) comment f, the *Sonus* court explained that inadequate representation under issue preclusion is not shown by the "failure of a representative to invoke all possible legal theories or to develop all possible resources of proof," but requires representation "so grossly deficient as to be apparent to the opposing party."  *Id.* at 65–66.

Other courts have found that dismissals based on a failure to answer interrogatories or post a security-for-cost bond did not have preclusive effect due to concerns with "the ease with which a disingenuous plaintiff could engineer a dismissal for failure to answer discovery in order to evade the notice requirement," and because such dismissals were not true dismissals on the merits.  *Id.* at 65 (discussing *Papilsky v. Berndt*, 466 F.2d 251, 258–60 (2d Cir. 1972)); *Saylor v. Lindsley*, 391 F.2d 965, 968–70 (2d Cir. 1968).

Although Nevada does not appear to have specifically adopted the Restatement (Second) of Judgments § 42(1), that section provides that "[a] person is not bound by a judgment for or against a party who purports to represent him" if, among other things, "[t]he representative failed to prosecute or defend the action with due diligence and reasonable

prudence, and the opposing party was on notice of facts making that failure apparent." Comment f to this section explains that "a judgment is not binding on the represented person where it is the product of collusion between the representative and the opposing party, or where, to the knowledge of the opposing party, the representative seeks to further his own interest at the expense of the represented person." However, "[t]actical mistakes or negligence on the part of the representative are not . . . sufficient to render the judgment vulnerable."[13]

Here, the *Fosbre* plaintiffs adequately litigated their case. The plaintiffs fully litigated the case through its dismissal based on demand futility and then fully briefed and argued their appeal in the Ninth Circuit. While it is common practice for plaintiffs to amend their complaints after dismissal under Federal Rule of Civil Procedure 12(b)(6), they are not required to do so. In *Fosbre*, four sets of counsel represented the plaintiffs, which suggests that appealing immediately rather than amending was tactical, not collusive or self-interested. Moreover, there is no showing that the Fosbre plaintiffs could have amended their complaint in a way that would have met the district court's concerns.

While we disagreed with the *Fosbre* plaintiffs' contention that they had sufficiently pled demand futility, our dismissal came only after thorough briefing and argument by those

---

[13] The Restatement (Second) of Judgments § 42 provides exceptions to § 41. The Nevada Supreme Court, in discussing and adopting § 41, noted the court's "long-standing reliance on the Restatement (Second) of Judgments in the issue and claim preclusion context." *Alcantara*, 321 P.3d at 917. Thus it appears likely that Nevada would follow § 42 as well.

plaintiffs.  Our denial of their appeal does not indicate that the *Fosbre* plaintiffs were inadequate representatives of IGT shareholders.  Further, although in the *Fosbre* appeal[14] we granted IGT's motion to strike certain documents submitted for the first time on appeal, we did not address the adequacy of the *Fosbre* plaintiffs' representation.  *Israni*, 473 F. App'x at 549.  A mistake as to the breadth of the record on appeal, without more, is not evidence of inadequate representation in the appeal or for the purposes of issue preclusion. Furthermore, Arduini does not suggest, nor is there any indication, that there was any collusion between the *Fosbre* plaintiffs and IGT.[15]

While we leave for another day the precise contours of what conduct constitutes inadequate representation, we simply note that the *Fosbre* plaintiffs' failure to amend their complaint, loss of their appeal, and the submission of documents on appeal that were not in the record below were insufficient to render them inadequate representatives, especially considering their vigorous pursuit of their appeal. In sum, we hold that Arduini has failed to show that the *Fosbre* plaintiffs did not adequately represent IGT and its shareholders.

---

[14] The *Fosbre* appeal was captioned *Israni v. Bittman*.  473 F. App'x 548 (9th Cir. 2012).

[15] Moreover, the district court, having presided over Arduini's case, the *Fosbre* case, and at least two other IGT cases, was well-situated to assess such representation and expressed no concern about the *Fosbre* plaintiffs' representation.

## C

Arduini also argues that issue preclusion should not apply because "[i]t is unfair to allow Defendants to avoid liability for their malfeasance simply because the *Fosbre* plaintiffs failed to meet pleading requirements" in light of the "strong public policy favoring resolution of disputes on the merits." Arduini contends that applying issue preclusion in this type of case would incentivize collusive behavior between defendants and unscrupulous shareholders and penalize shareholders who do not rush to the courthouse to become "first filers."

However, as noted above, issue preclusion does not apply where the first shareholder did not adequately represent the corporation, minimizing the risk of unfairness to shareholders. *See* Fed. R. Civ. P. 23.1; Nev. R. Civ. P. 23.1; *Sonus*, 499 F.3d at 64–65. Indeed, collusive behavior between shareholders and defendants, if shown, would render the shareholders inadequate representatives and thus issue preclusion would not apply. It is also unfair to require defendants to relitigate the issue of demand futility every time a different shareholder files suit, provided that the first shareholder adequately represented the company. *See Alcantara*, 321 P.3d at 916 ("[I]ssue preclusion is applied to conserve judicial resources, maintain consistency, and avoid harassment or oppression of the adverse party.") (citing *Berkson*, 245 P.3d at 566). Thus we reject Arduini's policy-based challenge to the application of issue preclusion in this case.

**D**

Arduini lastly argues that application of issue preclusion here violates his due process rights, because he was not provided with notice of the *Fosbre* dismissal. He argues that notice is required to ensure that dismissal is in the best interests of the corporation and absent shareholders. Arduini concludes that the fact that his counsel had notice of the *Fosbre* proceedings is irrelevant, citing *Taylor v. Sturgell*, 553 U.S. 880 (2008).

Arduini's due process argument fails. Rule 23.1 only requires that "[n]otice of a proposed settlement, voluntary dismissal, or compromise . . . be given to shareholders or members in the manner that the court orders." *See also* Nev. R. Civ. P. 23.1 ("The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs."). There is no provision requiring notice of an *involuntary* dismissal. *Sonus*, 499 F.3d at 65 (citing, *inter alia*, *Burks v. Lasker*, 441 U.S. 471, 485–86 n.16 (1979)).

Further, Nevada follows Restatement (Second) of Judgments § 41(2), which states that "[a] person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process." *Alcantara*, 321 P.3d at 917. Even assuming that Arduini was the true party in interest (rather than IGT), the *Fosbre* plaintiffs were in essence representing all IGT shareholders when they filed their derivative suit, thus binding subsequent derivative plaintiffs even if they personally did not have notice of the *Fosbre* dismissal.

We recognize that at least one court has held that the dismissal of a derivative suit for failure to prosecute, such as the failure to answer interrogatories, would not have preclusive effect based on lack of notice to the shareholders. *See Papilsky*, 466 F.2d at 258–60.  However, the *Fosbre* plaintiffs "actively litigated the demand futility issue," which was decided on its merits, and thus there is less risk of collusive behavior between the shareholder and the corporation.  *See Sonus*, 499 F.3d at 65; *Papilsky*, 466 F.2d at 259 ("Even without notice, a dismissal after a hearing on the merits is a binding adjudication of the corporate claim and precludes non-party stockholders from bringing a subsequent derivative suit based on the same cause of action.") (citation omitted).

Further, *Taylor v. Sturgell* is inapposite.  In *Taylor*, two friends filed successive actions seeking to compel the release of identical documents from a government agency under the Freedom of Information Act.  553 U.S. at 885.  After the agency won the first suit, a lower court applied issue preclusion to bar the second filed suit based on "virtual representation," a legal doctrine the *Taylor* court rejected.  *Id.* at 895–901.  However, the *Taylor* plaintiff and the plaintiff in the first suit had no legal relationship with each other.

Here, both Arduini and the *Fosbre* plaintiffs were acting in a representative capacity as shareholders on behalf of IGT. Because the *Fosbre* plaintiffs adequately represented the shareholders and issue preclusion applies, there is no need for Arduini to receive personal notice of the *Fosbre* court's decisions.  *See Taylor*, 553 U.S. at 897–98, 900, 905. Furthermore, Arduini's counsel had actual notice of the *Fosbre* proceedings, as shown by his filings in a related state

case. Accordingly, we reject Arduini's due process argument.

**V**

The district court properly found that issue preclusion prevented Arduini from relitigating the issue of demand futility. The issue of demand futility was the same in both *Fosbre* and this case, and thus there is an identity of issues. Even assuming the district court looks to the specific allegations of demand futility to determine whether there is identity of issues, the vast majority of Arduini's demand futility allegations are essentially identical to those raised in *Fosbre*. The new allegations, moreover, are cumulative, could have been raised in *Fosbre*, or make no difference to the demand futility analysis because they do not show that at least half of the current board was "interested."

Arduini and the *Fosbre* plaintiffs were in privity because IGT was the true party in interest and there is no indication that the *Fosbre* plaintiffs were inadequate representatives. Further, there is no inequity in applying issue preclusion here because the *Fosbre* plaintiffs fully litigated their demand futility claim. There was no due process violation because there is no requirement that shareholders be given notice of dismissal in a derivative suit where the issue of demand futility is fully litigated and dismissed on the merits. Moreover, the record shows that Arduini's counsel had actual notice of the *Fosbre* proceedings.

Because Arduini did not make a pre-suit demand and cannot show demand futility, dismissal was proper and we **AFFIRM**.

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

### Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ▶ A material point of fact or law was overlooked in the decision;
  - ▶ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ▶ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
>
> ► The proceeding involves a question of exceptional importance; or
>
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)    Deadlines for Filing:**

- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)    Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)    Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; St. Paul, MN 55164-0526 (Attn: Jean Green, Senior Publications Coordinator);
  ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** ...................................................................................................................*(Rev. 12-1-09)*

# United States Court of Appeals for the Ninth Circuit

# BILL OF COSTS

This form is available as a fillable version at:
*http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf*.

**_Note:_** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

[                              ]  v.  [                              ]  9th Cir. No. [            ]

The Clerk is requested to tax the following costs against: [                              ]

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED *(Each Column Must Be Completed)* | | | | ALLOWED *(To Be Completed by the Clerk)* | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** |  |  | $ | $ |  |  | $ | $ |
| **Opening Brief** |  |  | $ | $ |  |  | $ | $ |
| **Answering Brief** |  |  | $ | $ |  |  | $ | $ |
| **Reply Brief** |  |  | $ | $ |  |  | $ | $ |
| **Other\*\*** |  |  | $ | $ |  |  | $ | $ |
| | | | **TOTAL:** | $ | | | **TOTAL:** | $ |

\* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

**Form 10. Bill of Costs -** *Continued*

I, [                    ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [                    ]

("s/" plus attorney's name if submitted electronically)

Date [                    ]

Name of Counsel: [                    ]

Attorney for: [                    ]

*(To Be Completed by the Clerk)*

Date [                    ]          Costs are taxed in the amount of $ [                    ]

Clerk of Court

By: [                    ] , Deputy Clerk